IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| v. | : | |
| SGT. BISSELL, C/O BARRETTO, C/O MARTIN, C/O VOURHEES, BANGGERT, M. NASH, LAURA BANTA, GENA CLARK, THOMAS C. GRENEVICH, LT. PRESSLEY, and PA. DEPT. OF CORRECTIONS | : | NO. 18-5072 |

## **MEMORANDUM OPINION**

**Savage, J.**                                                                                           August 15, 2019

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*,[1] filed this civil action asserting claims under the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. He also brought state law claims. He has sued the Pennsylvania Department of Corrections ("DOC") and several of its officers and employees.[2] On December 20, 2018, we dismissed his claims against all defendants except the ADA claim against the DOC.[3] Talley alleges the DOC violated Titles II and V of the ADA when its officers denied Talley access to DOC psychiatric services and used excessive force against him for requesting those services.

---

[1] December 4, 2018 Order granting Pl.'s Mot. for Leave to Proceed *In Forma Pauperis* (ECF No. 5).

[2] Compl. (ECF No. 2).

[3] December 20, 2018 Order granting Pl.'s Mot. for Leave for Reconsideration (ECF No. 9). In the December 4, 2018 order, we originally dismissed the DOC finding it had Eleventh Amendment immunity. We granted Talley's motion for reconsideration on December 20, 2018, finding he could proceed with his ADA claims against the DOC only.

1

The DOC has moved for summary judgment, contending that there is no evidence to support the ADA claims. We agree the undisputed facts demonstrate that the DOC did not violate the ADA. Therefore, we shall grant the DOC's motion.

## Background[4]

Talley is an inmate in the custody of the DOC and was housed at State Correctional Institution at Graterford in the Divisionary Treatment Unit ("DTU") when the events alleged in the complaint occurred.[5] The DTU houses inmates with mental health needs.[6] The DTU psychology staff conducts rounds every weekday, and the Program Review Committee ("PRC") reviews each DTU inmate weekly.[7]

On December 11 and 12, 2017, a psychiatrist and one of DOC's Psychological Services Associates ("PSA"), McKenzie Nash, was assigned to the DTU and visited Talley in his cell during her rounds.[8] Nash recorded that she did not observe mental health issues or psychological symptoms.[9] Talley contends that because he was on hunger strike at the time, Nash was on notice that he was suicidal.[10]

---

[4] These facts are stated from the parties' memoranda of facts and exhibits attached in support of the summary judgment briefing. See Def.'s Statement of Undisputed Facts (ECF No. 22-2) ("DSUF"); Pl.'s Resp. to Def.'s Statement of Undisputed Facts (ECF No. 23) ("PRDSUF"). Paragraph 6(c) of the Scheduling Order states that "[a]ll material facts set forth in the Statement of Undisputed Facts required to be served by the movant shall be taken by the Court as admitted unless controverted by the opposing party." Paragraph 6(d) states that "[s]tatements of material facts in support or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the record which support each statement." Scheduling Order (ECF No. 17). All facts are undisputed unless otherwise noted. Any facts that Talley contends are disputed but for which he failed to cite specific, contradictory facts in the record are deemed undisputed.

[5] DSUF ¶¶ 1-2.

[6] Id. ¶ 3.

[7] Id. ¶¶ 4-5.

[8] Id. ¶¶ 6-7, 9.

[9] Id. ¶¶ 8, 10.

[10] PRDSUF ¶¶ 8, 10.

On December 13, 2017, Talley was seen by the PRC, which included Nash.[11] After the PRC informed Talley it would not approve commissary purchases, he complained of suicidal ideation.[12] When corrections officers returned Talley to his cell, he resisted efforts to remove his handcuffs from his second wrist "until afforded the opportunity to speak to a psychologist and/or psychiatrist."[13] The officers used a tether to maintain control over the handcuffs and were eventually able to get them off Talley's wrists.[14] Talley alleges that during this process, the officers violently pulled the tether and pushed his arm.[15] Following this incident, Talley lit several fires in his cell.[16] During this time, Talley alleges Major Clark forbid Talley's transfer to the Psychiatric Observation Cell ("POC").[17] Talley eventually saw medical triage later that evening due to his weight and hunger strike.[18]

Talley also continued to demand mental health treatment throughout the day.[19] Nash saw Talley during her rounds later that day.[20] Dr. Fred Geller, a medical doctor, also visited him later that day.[21] The following day, another PSA, Jennifer Ward, noted that during her rounds, Talley was calm and polite.[22]

---

[11] DSUF ¶¶ 12, 17.
[12] *Id.* ¶¶ 11-13.
[13] *Id.* ¶¶ 15-16.
[14] *Id.* ¶ 18.
[15] Compl. ¶¶ 14, 16.
[16] *Id.* ¶¶ 17-27.
[17] *Id.*
[18] *Id.* ¶ 28.
[19] *Id.* ¶¶ 12, 16, 18.
[20] *Id.*
[21] DSUF ¶¶ 21-22.
[22] *Id.* ¶¶ 24-25.

Talley filed this civil action pursuant to 42 U.S.C. § 1983, Titles II and V of the ADA, and state law. We dismissed all claims and defendants, except the ADA claim under Title II against the DOC.[23]

With respect to the ADA claim against the DOC, Talley alleges: (1) the DOC personnel denied him access to the DOC's psychological/psychiatric services; (2) the DOC personnel employed excessive force against him "for requesting to exercise his right to such services and/or programming;" and (3) Major Clark instructed the other defendants not to send him to the POC under any circumstances, even though he was eligible for those services.[24]

The DOC moves for summary judgment. Although the DOC concedes that Talley is an individual with a disability, it argues that he has failed to establish that the DOC violated Title II because he was not denied access to services, programs, or activities.

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the

---

[23] *See* December 20, 2018 Order. In his complaint, Talley contends that the defendants violated Title II in their official capacities and Title V in their individual capacities. Compl. ¶ 39. In our December 20, 2018 order, we dismissed his ADA claims against the individual officers. Talley himself concedes that the Title V claim cannot be brought against a "person," and the only viable claim remaining involves his ADA claim under Title II. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3 (ECF No. 33). Thus, we only address Title II of the ADA.

[24] Compl. ¶¶ 39-40.

4

motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**Analysis**

The ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in providing services, programs, and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). To state an ADA claim, a plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA. 42 U.S.C. § 12102(1)(A).

5

However, there is no evidence that Talley was excluded from the mental health services that he requested.

The record is clear that Talley was provided multiple mental health services during the period immediately prior to, during and after his complaints of suicidal ideation. He was housed in the DTU, a residential unit specifically catering to inmates with mental health issues.[25] Inmates in the DTU received daily mental health services.[26] Talley saw Nash, a psychiatrist, for days leading up to and on December 13, 2017, both individually and as a part of the PRC group.[27] He was given a physical examination by a medical doctor later that same day.[28]

The DOC records show that Nash, an experienced mental health professional, did not find Talley in immediate danger during the days leading up to and on December 13.[29] She notes that in her professional opinion, Talley only complained of suicidal ideation on December 13 as a result of being told he could not obtain any commissary.[30] Talley disputes her assessment, contending that he had "already" been suicidal prior to his declaration and Nash should have known because he was on hunger strike.[31]

Talley does not dispute he received treatment. Instead, he contends that his

---

[25] DSUF ¶¶ 1-3.

[26] *Id.* ¶¶ 4-5.

[27] *Id.* ¶¶ 6-7, 9, 12, 17.

[28] *Id.* ¶¶ 21-22.

[29] *Id.* ¶¶ 8-10; Nash Decl. ¶ 13(a)-(c) (ECF No. 22-3); ICAR Notes, DSUF Ex. A (ECF No. 22-3); Program Review Committee Action Sheet, DSUF Ex. D (ECF No. 22-3); Mental Health Contact Notes, DSUF Exs. B, C, E (ECF No. 22-3).

[30] DSUF ¶¶ 13-14; Nash Decl. ¶ 13(c); ICAR Notes; Program Review Committee Action Sheet; Mental Health Contact Notes.

[31] PRDSUF ¶¶ 13-14.

hunger strike should have put Nash and the DOC on notice that he was suicidal.[32] He complains that it was Nash's "inability to identify" that he was "performing" an act of suicidal ideation through starvation.[33] Yet, he does not dispute that he did not complain of any suicidal ideation or any other psychosis or mental health issue to anyone at the prison prior to the December 13 PRC meeting.[34]

There is no evidence that Talley was injured by the corrections officers' use of force on his arm. The prison records are barren of any notations of physical injuries.[35] The corrections officers also did not note any complaints from Talley regarding pain.[36] Instead, Talley continued to request mental health treatment only, which he received through a subsequent visit from Nash later that day.[37] Talley was also seen by a medical doctor that evening, who did not note any injuries.[38]

At most, Talley's complaints stem from a delay in mental health treatment—treatment that he received later that same day. *Compare Jackson v. New Jersey*, 465 F. App'x 82, 83 (3d Cir. 2012) (holding that inmate was not a victim of discrimination when documentation showed that agency was attempting to meet needs and taking requests seriously, although "perhaps not as quickly or comprehensively" as preferred by inmate when agency was unable to guarantee 24-hour transportation or meet demands

---

[32] *Id.* ¶¶ 8-10.

[33] *Id.*

[34] *Id.*

[35] DSUF ¶¶ 15-16; Abuse Investigation Summary, DSUF Ex. B (ECF No. 22-4).

[36] Abuse Investigation Summary.

[37] DSUF ¶ 21. Talley disputes this fact as "irrelevant," but does not dispute the visit itself. *See* PRDSUF ¶ 21.

[38] DSUF ¶ 22; *see also* Medical Progress Note, DSUF Ex. F (ECF No. 22-3). Talley again disputes the relevance of this fact but does not dispute the visit itself. *See* PRDSUF ¶ 22.

7

"immediately"), *with Geness v. Cox*, 902 F.3d 344, 362-63 (3d Cir. 2018) (finding that delays amounting to months and years for treatment was refusal of service in violation of the ADA). In short, the evidence establishes that Talley was not denied necessary treatment, but only that he did not get the treatment when he wanted it.

There is also no evidence that Talley complained that he was refused treatment because of his condition. Instead, he complains that he was ignored and delayed in obtaining the services he requested. The ADA does not cover such a claim. *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) ("Brown has not alleged facts sufficient to show that the prison denied him access to mental health treatment 'by reason of' his alleged disabilities," nor that his placement was because of a discriminatory animus based on his mental disabilities; plaintiff instead alleged that prison ignored his disabilities in order to justify his placement); *see also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley does not claim that he was excluded from any program on the basis of his disability. Rather, he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.") (citing *Bryant v. Madrigan*, 84 F.3d 246, 248 (7th Cir. 1996)); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), *overruled on other grounds as recognized by Horton v. City of Santa Maria*, 915 F.3d 592, 599-600 (9th Cir. 2019). There is no evidence that the DOC discriminated against Talley because of his disability.

## Conclusion

After viewing the facts in the light most favorable to Talley and drawing all reasonable inferences in his favor, we conclude that there is no evidence from which a

reasonable jury could find that the DOC violated Title II of the ADA.  Talley was provided adequate services for his disability.  Therefore, the DOC is entitled to judgment as a matter of law.